**KAUFMAN DOLOWICH VOLUCK**
ATTORNEYS AT LAW

Matthew R. Capobianco
mcapobianco@kdvlaw.com

Kaufman Dolowich & Voluck, LLP

135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Telephone: 516.681.1100
Facsimile: 516.681.1101

www.kdvlaw.com

March 1, 2018

**VIA ELECTRONIC FILING**
Hon. Barbara C. Moses
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    ***Castro et al. v. Mechanical Installation Corp. et al.***
           **Case No. 17-cv-07290 (GHW) (BCM)**

Dear Judge Moses:

    This office represents Defendants Mechanical Installation Corp., Mechanical Service Corp. of New York, Ralph DeRose and Domenick DeRose ("Defendants") in the above referenced matter. This letter motion is submitted jointly with Plaintiffs Jose Castro ("Castro") and Rayan Thomas ("Thomas") (collectively "Plaintiffs") to respectfully request that Your Honor approve the within Settlement and Release Agreement (the "Agreement") between the Parties, annexed hereto as "Exhibit A." The Agreement represents a good faith effort between experienced counsel to negotiate an action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), resulting in a settlement which provides Plaintiffs with a full and complete recovery of their damages under applicable law. Accordingly, the Parties respectfully request that Your Honor approve the Agreement as submitted.

**I.**    <u>**Plaintiffs' Allegations and Defendants' Responses**</u>

    On September 25, 2017, Plaintiffs, represented by counsel herein, filed a wage-and-hour lawsuit against Defendants alleging FLSA and NYLL violations. Plaintiffs contend that they were non-exempt employees entitled to overtime compensation for each hour worked over forty (40) in a workweek under both the FLSA and NYLL.

    Throughout the duration of their employment, Plaintiffs were employed by Defendants as mechanics. Plaintiff Castro alleges that he was employed from on or about August 2016 until May 2017. Similarly, Plaintiff Thomas alleges that he was employed from on or about July 2016 until August 2017. Plaintiffs allege that, throughout their employment, they regularly worked five (5) days per week for approximately thirteen (13) hours per day. However, Plaintiffs claim that Defendants failed to pay them the proper overtime wages for hours worked in excess of forty (40) in a workweek. More specifically, Plaintiffs claim that Defendants paid them their straight rate of pay for all hours worked. Lastly, Plaintiffs sought penalties/damages for Defendants' alleged failure to comply with the NYLL Section 195 requirements regarding wage notices and wage statements/weekly pay stubs.

Honorable Barbara C. Moses
March 1, 2018
Page 2 of 6

Defendants dispute Plaintiffs' allegations, and contend that they have complied with the FLSA and NYLL. For one, Defendants dispute the amount of days and number of hours worked per week by Plaintiffs. Moreover, Defendants dispute that Plaintiffs worked thirteen (13) hours per day, every day, without breaks, during the relevant time period. Secondly, Defendants dispute that Plaintiffs were not paid the correct overtime rate for every hour over 40 during the relevant time period. Lastly, Defendants dispute that Plaintiffs were not provided with a statement with every payment of wages for the entire relevant time period, and that Plaintiffs were not provided written notice of their wages at the time of hire, and at all other relevant times during their employment.

During Defendants' initial investigation, Defendants learned that both Plaintiffs routinely worked less than forty (40) hours per week. More specifically, according to Defendants' payroll records, Plaintiffs worked 40 hours or less approximately 50% of all workweeks during the relevant time period. Due to the nature of the business, there were certain weeks that Plaintiffs worked less than ten (10) total hours. In addition, Defendants were also able to conclude that Plaintiffs' claimed employment period (*i.e.*, relevant time period) was inaccurate.

In sum, there is a bona fide dispute between the Parties regarding Plaintiffs' wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.   Settlement Negotiations

Following this office's retention as counsel, Plaintiffs' counsel conveyed a detailed damages analysis outlining each Plaintiff's alleged damages. Pursuant to their damages analysis, Plaintiffs conveyed an initial settlement demand in the amount of $50,000. The demand was wholly based on Plaintiffs' maximum possible recovery if they were able to establish all of their claims. The initial demand also included liquidated damages, attorneys' fees and costs. In response to the initial demand, Defendants conveyed a counter-offer in the amount of $15,000. In doing so, Defendants noted the potential risks inherent in Plaintiffs' claims. In particular, Defendants noted that, the hours actually worked by Plaintiffs did not support a $50,000 demand. However, Defendants also noted their likely costs and potential exposure in going to trial.

In response to Defendants' counter-offer, Plaintiffs conveyed a reduced demand in the amount of $37,500 (inclusive of attorneys' fees' and costs), and indicated that this new demand reflected recent developments concerning the amount of hours Plaintiffs *actually* worked. Defendants then conveyed a $17,000 counter-offer in response to Plaintiffs' reduced demand (which Defendants considered excessive given the evidence), noting their continued position that Plaintiffs were paid in conformity with both the FLSA and NYLL. After these extensive negotiations, the Parties reached a settlement in the amount of $22,000, inclusive of attorneys' fees and costs.

Honorable Barbara C. Moses
March 1, 2018
Page 3 of 6

## III.    The Settlement is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at \*3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at \*22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at \*1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) fairly accounts for Plaintiffs' and Defendants' possible recovery; (2) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (3) is the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

1. *The Agreement Fairly Accounts for Plaintiffs' Possible Recovery*

As noted in Point II, *supra*, Plaintiffs' maximum possible recovery in this matter was approximately $50,000. However, in order to receive such a recovery, Plaintiffs would be required to establish that: (a) the FLSA covered Plaintiffs; (b) they were non-exempt and entitled to overtime compensation; (c) that they worked five (5) days per week every week for thirteen (13) hours per day during the relevant time period ; d) that their alleged relevant time period was accurate; (e) that they were entitled to NYLL § 195 penalties throughout the entire relevant time period; and (f) that they were entitled to liquidated damages, attorneys' fees and costs.

Defendants were confident that they could refute all of these assumptions, particularly in light of the evidence conveyed to Plaintiffs' counsel in the Parties' pre-discovery phase. First, Defendants were confident that they could prove Plaintiffs routinely worked fewer than forty (40) hours in a workweek, and if they worked overtime, it was just a few hours per week. Second, Defendants were also confident that they could establish that some weeks Plaintiffs were paid at least 1 ½ times their regular rate for all hours worked in excess of forty (40). Lastly, Defendants were confident that they could establish that both Plaintiffs worked for less a period

Honorable Barbara C. Moses
March 1, 2018
Page 4 of 6

of time than what they alleged in their Complaint.  It is therefore Defendants' position that the settlement amount represents the maximum amount that Plaintiffs would receive at trial.

Finally, it cannot be said that the Agreement constitutes "a mere waiver of statutory rights brought about by an employer's overreaching." To the contrary, the Agreement only resolves the *bona fide* dispute between the Parties relating to the payment of Plaintiffs' wages and the other claims raised in the Complaint. The Agreement does not contain a general release, and therefore preserves Plaintiffs' ability to raise other claims which may have arisen in the course of their employment. Further, Plaintiffs are satisfied with the settlement amount and voluntarily and willingly entered into the agreement. The allocation of the settlement is reasonable in that it reflects a proportion of damages owed to each Plaintiff based on the number of weeks he or she worked for Defendants. *See Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381S, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on plaintiffs' length of service was equitable and reasonable).  Accordingly, it is apparent that the Agreement amount fairly accounts for Plaintiffs' possible recovery in this matter.

2.    *The Risk and Expenses Faced by the Parties*

Both Parties in this matter faced substantial risks in proceeding forward in this litigation. As noted *supra*, Plaintiffs faced the very distinct possibility of, at a minimum, having their alleged overtime hours of 20-25, cut to just a few per week (if at all), inasmuch as Defendants were prepared to present evidence and payroll documentation detailing that their hours worked each week varied based upon a number of factors, and seldom ever exceeded forty (40). Additionally, and notwithstanding Defendants' contention that Plaintiffs' alleged employment period was inaccurate, Plaintiffs would not have succeeded in establishing that Defendants failed to furnish them with a wage notice at the beginning of their employment and at all other relevant times, and a wage statement every pay period during the relevant time period.  Finally, Plaintiffs faced the prospect of waiting months, if not years, for the matter to proceed through trial.

Conversely, while Defendants were confident that they would be able to severely undermine, if not defeat, Plaintiffs' claims, they were also mindful that this would have only occurred after a protracted litigation and at a significant cost. Moreover, the costs of litigation and prospects of liability for Defendants clearly weighed in favor of early resolution, even at the cost of having to accept all of Plaintiffs' allegations aside from the amount of overtime hours worked per week, the alleged relevant time period, and the magnitude of NYLL § 195 violations. Accordingly, both Parties faced substantial risks in proceeding forward with the litigation, which weighs in favor of approval of the Agreement.

3.    *The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion*

Finally, it cannot be disputed that the Agreement was the product of legitimate bargaining between experienced counsel which was devoid of any semblance of fraud or collusion. Plaintiffs' counsel zealously advocated on behalf of his clients throughout, from negotiating the amount of the settlement, to the terms of same. Similarly, Defendants worked to ensure that, at a

Honorable Barbara C. Moses
March 1, 2018
Page 5 of 6

minimum, Plaintiffs would not receive any compensation beyond what they were potentially entitled to. Far from the product of fraud or collusion, the Agreement constitutes an effort by experienced labor and employment counsel for both Parties to resolve the dispute under the best possible circumstances for their respective client. Accordingly, the Agreement should be approved by the Court.

## IV.    Plaintiffs' Application for Attorney's Fees Should Be Approved

Pursuant to the retainer agreement between Plaintiffs and counsel, Plaintiffs' attorneys' fees are $7,333.32, which equals 33.33% of the $22,000.00 Settlement Payment. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). As Judge Pitman has explained, *Cheeks* does not require the Court to review a plaintiff's fee arrangement with his attorney:

> I do not address the fee arrangement between plaintiff and his counsel because I do not believe I am required to do so under *Cheeks* . . . . As described in *Cheeks*, the purpose of the FLSA is to regulate the relationship between an employee and his employer and to protect the employee from over-reaching by the employer. I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney.

*Villalva-Zeferino v. Park*, No. 15-CV-6932 (HBP), 2016 WL 740387, at *2 n. 2 (S.D.N.Y. Feb. 17, 2016); *Gutierrez v. 352 E. 86th St. Rest. Inc. d/b/a "Gracie's Corner Diner" et al.*, No. 15 Civ. 2064, 2016 WL 750940 at *1 n. 1(S.D.N.Y. Feb. 19, 2016).

Plaintiffs' counsel's lodestar is currently $7,230.30 which represents 18.40 hours worked on this file. As such, we believe that the contingency fee in this case is fair and reasonable. *See* Exhibit "B," a true and correct copy of Plaintiffs' counsel's contemporaneous time records. Plaintiff counsel billed at a rate of $400.00 per hour. Plaintiffs' counsel graduated from Vanderbilt University Law School in 2007, and worked at Fox Rothschild LLP from 2007 through early 2010, a national law firm where he practiced employment litigation defense, with a primary focus on wage and hour class and collective action cases. Plaintiffs' counsel has worked at The Klein Law Group PC since June 2010, and became partner in early 2016. At The Klein Law Group, Plaintiffs' counsel has served as the attorney of record for dozens of wage and hour lawsuits in the Southern District of New York and the Eastern District of New York.

The one-third fee requested is a fair and reasonable amount, as it was not only agreed upon by Plaintiff and counsel in the retainer agreement, but is also routinely approved by courts in the Second Circuit. *See Flores v. Anjost Corp.*, No. 11-CV-1531 (AT), 2014 WL 321831, at *9 (S.D.N.Y. Jan. 28, 2014); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-CV-3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013); *Mireku v. Red Vision Sys., Inc.*, No. 11-CV-9671 (RA) (JLC), 2013 WL 6335978, at *3 (S.D.N.Y. Dec 6, 2013).

Honorable Barbara C. Moses
March 1, 2018
Page 6 of 6

## V.     <u>Conclusion</u>

For the foregoing reasons, it is respectfully requested that the Court approve the Parties'
Agreement.


Respectfully submitted,
Kaufman Dolowich & Voluck, LLP

Matthew R. Capobianco

cc:     Darren P.B. Rumack (*via* ECF)


4839-8337-6988, v. 1

# Exhibit A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is hereby made and entered into by and between JOSE CASTRO, an individual, on behalf of himself, his agents, assigns, attorneys, heirs, successors, executors and administrators ("Castro"), and RAYAN THOMAS, an individual, on behalf of himself, his agents, assigns, attorneys, heirs, successors, executors and administrators ("Thomas") (collectively, the "Plaintiffs"), on the one hand, and RALPH DEROSE, an individual, on behalf of himself, his agents, assigns, attorneys, insurers, re-insurers, heirs, successors, executors and administrators ("R. DeRose"), DOMENICK DEROSE, an individual, on behalf of himself, his agents, assigns, attorneys, insurers, re-insurers, heirs, successors, executors and administrators ("D. DeRose"), MECHANICAL INSTALLATION CORP., a New York corporation ("Mechanical Installation"), and MECHANICAL SERVICE CORP. of NEW YORK, a New York corporation ("Mechanical Service") (collectively, the "Defendants"), on the other hand (the Plaintiffs and the Defendants are referred to collectively herein as the "Parties").

## RECITALS

**WHEREAS**, on September 25, 2017, Plaintiffs, through their attorneys, filed a complaint asserting claims against the Defendants for alleged violations of the Fair Labor Standards Act of 1938, as amended, and related regulations (together, the "FLSA"), and the New York Labor Law and related regulations promulgated by the NYS Commissioner of Labor (together, the "NYLL"), seeking alleged unpaid overtime premium compensation, penalties for alleged failure to provide pay rate/pay day notices, liquidated damages, statutory damages and/or penalties, interest, costs and attorney's fees, in an action filed in the United States District Court for the Southern District of New York (the "Court"), entitled <u>Castro, et al. v. Mechanical Installation Corp., et al.</u>, Case No. 17-CV-07290 (GHW) (the "Action"); and

**WHEREAS**, the Parties to this Agreement mutually desire to fully resolve and forever settle all of the claims asserted by the Plaintiffs against the Defendants in the Action, for the purpose of avoiding the time, expense and inconvenience of further litigation; and

**WHEREAS**, all Parties to this Agreement are and have been represented by legal counsel at all times throughout the negotiation, preparation and execution of this Agreement, and all Parties have had a full and fair opportunity to consider this Agreement and review all of its terms with the assistance of such counsel; and

**WHEREAS**, all Parties to this Agreement have carefully considered other alternatives to executing this Agreement and have entered into this Agreement knowingly, voluntarily and without coercion; and

**NOW THEREFORE**, with the intent to be legally bound hereby and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all of the Parties hereto, and upon incorporating the WHEREAS provisions listed above, IT IS HEREBY AGREED by and between the Parties as follows:

## AGREEMENT

(1)   Consideration:   (a) In consideration for the Plaintiffs signing this Agreement and complying with all of the terms and conditions herein, Defendants shall pay to the Plaintiffs and their attorneys the total sum of **Twenty Two Thousand and 00/100 Dollars ($22,000.00)** (the "Settlement Amount"), payable as follows:

     i.    Due twenty one (21) days following approval of this Agreement by the Court and the dismissal of the Action with prejudice, the amount of $22,000.00, allocated as follows: one (1) check payable to Castro in the amount of $3,666.67; representing economic damages, less withholdings and deductions; (1) check payable to Castro in the amount of $3,666.67, representing liquidated damages; one (1) check payable to Thomas in the amount of $3,666.67; representing economic damages, less withholdings and deductions; (1) check payable to Thomas in the amount of $3,666.67 representing liquidated damages; and one (1) check payable to The Klein Law Group, in the amount of $7,333.32, representing attorney's fees.

(b)   The Settlement Amount to be paid to the Plaintiffs and their attorneys pursuant to this Agreement is in complete settlement of all demands or claims, including for alleged unpaid wages, liquidated damages, statutory penalties, interest, attorney's fees, and costs which the Plaintiffs have asserted in the Action against the Defendants.  All settlement payments shall be delivered to: The Klein Law Group P.C., 39 Broadway, Suite 1530, New York, NY 10006, Attn: Darren P.B. Rumack, Esq.  The Plaintiffs shall not be entitled to, and shall not seek, any further compensation from the Defendants, including any further monetary payment, beyond that which is specifically set forth in this paragraph. Defendants shall issue IRS Forms 1099 to Plaintiffs for their respective liquidated damages portions of the Settlement Amount, and Plaintiffs shall provide W4 Forms for their respective wage portions of the Settlement Amount. The Plaintiffs expressly understand and agree that they shall be solely responsible for the payment of all federal, state and local taxes that may be due on their respective portions of the Settlement Amount, and shall indemnify Defendants in connection with any tax liability resulting from said payments.

(c)   None of the payments specified in subparagraph (a) above shall be made until and unless the following conditions shall first have been met: (i) each of the Plaintiffs have provided Defendants with properly completed, duly executed W-4 Forms; (ii) The Klein Law Group P.C. has provided Defendants with a properly completed, duly executed IRS Form W9; and (iii) the Court has approved this Agreement and dismissed the Action with prejudice.

(2)   No Admission of Liability:   The Defendants do not admit to any liability or wrongdoing whatsoever on their part or by any individuals acting under their supervision or on their behalf.  Neither this Agreement nor the payment or acceptance of the Settlement Amount shall be construed, described or characterized by any of the Parties hereto or by any of their agents or representatives as an admission by the Defendants of any liability or wrongdoing or violation of any law, rule, regulation, public policy or contractual provision.

(3)   Release of Claims by Plaintiffs:   In consideration for the foregoing, the Plaintiffs, on behalf of themselves and their dependents, heirs, executors, administrators, legal and/or personal

representatives, successors, assigns and agents, do hereby knowingly, voluntarily, unconditionally and irrevocably release and forever discharge Defendants, and each and every one of their respective divisions, affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities, predecessors, successors, management companies, assigns, officers, directors, trustees, employees, agents, shareholders, administrators, representatives, attorneys, insurers, re-insurers or fiduciaries, past, present or future (hereinafter referred to collectively as the "Releasees"), from any and all claims arising under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, as amended, and related regulations, and the New York Labor Law and related regulations promulgated by the NYS Commissioner of Labor, including but not limited to all claims asserted by the Plaintiffs in the Action, and any other statutory, regulatory and/or common law claims for alleged unpaid wages, unpaid minimum wages, unpaid overtime compensation, spread-of-hours compensation, unpaid benefits time, liquidated damages, statutory damages and/or penalties, interest, costs and attorneys' fees under any federal, state or local laws, based upon any conduct occurring from the beginning of the world to the date of the Plaintiffs' execution of this Agreement. To the fullest extent permitted by law, the Plaintiffs promise not to sue or bring any charges, complaints or lawsuits related to the claims hereby released against the Releasees in the future, individually or as members of a class. The Plaintiffs also specifically waive and release their rights to recover any money whatsoever from any of the Releasees in connection with any charge, claim or complaint filed by anyone with any government agency investigating any alleged violations relating to any of the released claims, to the fullest extent permitted by law. This waiver, release and promise not to sue is binding on the Plaintiffs, their heirs, legal representatives and assigns. In the event that any of the Plaintiffs violate this Agreement by bringing or maintaining any charges, claims or lawsuits against any of the Releasees contrary to this Paragraph, such Plaintiff(s) shall pay all costs and expenses of any of the Releasees in defending against such charges, claims or actions, including reasonable attorney's fees. The Plaintiffs specifically waive and release any right to become members of any class or collective action in any proceeding or case in which a claim or claims against the Releasees for alleged violations of the Fair Labor Standards Act and/or the New York Labor Law may arise, in whole or in part, from any event which occurred prior to Plaintiffs' execution of this Agreement. It is understood that if any of the Plaintiffs, by no action of their own, become members of any such class or collective, that such Plaintiffs shall take all steps necessary to opt out of any such class or collective action.

(4)    Submission of Agreement for Court Approval; Dismissal of the Action: Once this Agreement has been executed and delivered by all of the Parties, the Parties shall promptly file this Agreement, along with the FLSA Fairness Letter Motion, with the Court for review and approval, together with the proposed Order of Dismissal with Prejudice annexed to this Agreement as Exhibit A. This Agreement shall not become final and binding upon the Parties until it has been approved by the Court as a fair and reasonable disposition of the Plaintiffs' Fair Labor Standards Act claims. The Parties shall request that the Court retain jurisdiction over the Action solely for the purpose of enforcing the payment terms of this Agreement, if necessary.

(5)    Non-Assignment of Claims: The Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person, firm, or corporation whatsoever, any of the matters released in this Agreement, and Plaintiffs agree to defend, indemnify and hold harmless Releasees against any debts, obligations, liabilities, demands,

damages, actions or causes of actions based on or arising out of or in connection with any such transfer or assignment, including without limitation, the payment of reasonable attorney's fees and costs.

(6)   Each Party To Bear Its Own Attorney's Fees:   The Parties shall each bear their own attorney's fees, costs, and expenses, except as may be expressly provided herein.

(7)   Medicare and Medicaid:   This settlement is based upon a good faith determination between the Parties to resolve a disputed claim.   The Parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The Parties resolved this matter in compliance with both state and federal law and made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.   Plaintiffs will have the sole responsibility to satisfy any lien or claim asserted against the Settlement Amount or arising from the settlement, including any potential future lien by Medicare and/or Medicaid (CMS/DSS/HRA). Plaintiffs will indemnify, defend, and hold Releasees and/or Releasees' insurers and re-insurers harmless from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown.   If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages, including multiple damages from Releasees and/or Releasees' insurers and re-insurers relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Plaintiffs' alleged injuries, claims or lawsuit, Plaintiffs will defend and indemnify Releasees and/or Releasees' insurers and re-insurers, and hold Releasees and/or Releasees' insurers and re-insurers harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

(8)   Successors and Assigns:   This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of each of the Parties.

(9)   Entire Agreement: · This Agreement, when signed by all Parties, shall constitute the entire understanding and agreement between the Parties and supersedes and cancels any and all prior oral and/or written agreements, if any, between and among them.   The Parties warrant that there were no representations, agreements, arrangements or understandings between them, whether written or oral, relating to the subject matter contained in the Agreement which are not fully expressed herein and that no party has relied upon any such representations, agreements, arrangements or understandings, whether written or oral, in entering into this Agreement.

(10)  Modification in Writing:   This Agreement may not be altered, amended or modified, nor any of its provisions waived, except by a further agreement in writing signed by all of the Parties or by their respective counsel.

(11)  No Other Assurances:   The Plaintiffs acknowledge that, in deciding to execute this Agreement, they have not relied upon any promises, statements, representations or commitments, whether spoken or in writing, made to them by anyone, except for what is expressly stated in this Agreement.

(12)  Governing Law and Interpretation; Breach: This Agreement and the rights and obligations of the Parties hereunder are to be governed by and construed and interpreted in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within New York, without regard to choice or conflict of laws principles. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or seek any damages for such breach. The prevailing party in any such action shall be entitled to reasonable attorney's fees and costs in connection with an action for breach.

(13)  Joint Preparation:  The language of all parts of this Agreement shall in all cases be construed as a whole, extending to it its fair meaning, and not strictly for or against any of the Parties. The Parties agree that, in consultation with their attorneys, they have jointly prepared and approved the language of the provisions of this Agreement, and that should any dispute arise concerning the interpretation of any provision hereof, neither the Plaintiffs nor the Defendants shall be deemed the drafter, nor shall any such language be presumptively construed in favor of or against either the Plaintiffs or the Defendants.

(14)  Severability:  If any provision, term or clause of this Agreement, or any part thereof, is declared by any court of competent jurisdiction or any foreign, federal, state, county or local government or any other governmental regulatory or administrative agency or authority or arbitration panel to be invalid, void, unenforceable or against public policy for any reason, that provision, term or clause, or any part thereof, shall be deemed severable, such that all other provisions, terms and clauses, or any other parts thereof, of this Agreement shall remain in full force and effect and shall continue to be valid and binding upon all of the Parties.

(15)  Paragraph Headings: Paragraph headings contained in this Agreement have been inserted herein only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

(16)  Counterparts; Execution: This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement may be delivered with original signatures or by facsimile or PDF-scanned signatures, either of which shall be deemed legally binding as fully as an original signature.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties hereto have knowingly and voluntarily executed this Agreement as of the date set forth beneath their respective signatures below:

STATE OF NEW YORK    )
                                             ) ss:
COUNTY OF *Rockland* )

I, **Jose Castro**, affirm that I have fully reviewed the foregoing Agreement with my attorneys, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

_____
JOSE CASTRO

Sworn to before me this

20th Day of _Feb_, 2018

_____
Notary Public

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified In Rockland County
Commission Expires Dec. 4, 20__

STATE OF NEW YORK    )
                                             ) ss:
COUNTY OF *Rockland* )

I, **Rayan Thomas**, affirm that I have fully reviewed the foregoing Agreement with my attorneys, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

_____
RAYAN THOMAS

Sworn to before me this

15 Day of _Feb_, 2018

_____
Notary Public

ANA E. RIOS
NOTARY PUBLIC, State of New York
No. 01RI6156593
Qualified In Rockland County
Commission Expires Dec. 4, 20__

STATE OF NEW YORK    )
                              ) ss:

COUNTY OF _Bronx._   )

I, **Domenick DeRose**, affirm that I am an officer of Mechanical Installation, Inc. and as such, I am authorized to execute the foregoing Agreement for the purposes contained therein, on behalf of Mechanical Installation, Inc.

MECHANICAL INSTALLATION, INC.
By: Domenick DeRose Jr
Title: PRES.

Sworn to before me this

28th Day of Feb , 2018

Notary Public

MUMINUL J ISLAM
Notary Public - State of New York
No. 01IS6279383
Qualified in Bronx County
My Commission Expires Apr. 08, 2021

STATE OF NEW YORK    )
                              ) ss:

COUNTY OF _____ )

I, **Domenick DeRose**, affirm that I am an officer of Mechanical Service Corp. of New York and as such, I am authorized to execute the foregoing Agreement for the purposes contained therein, on behalf of Mechanical Service Corp. of New York.

MECHANICAL SERVICE CORP. OF NEW YORK
By: Domenico DeRose Jr
Title: PRES.

Sworn to before me this

28th Day of Feb , 2018

Notary Public

MUMINUL J ISLAM
Notary Public - State of New York
No. 01IS6279383
Qualified in Bronx County
My Commission Expires Apr. 08, 2021

Page 8 of 10

STATE OF NEW YORK )
                      ) ss:
COUNTY OF Bronx )

I, **Domenick DeRose**, affirm that I have fully reviewed the foregoing Agreement with my attorneys, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

_____
DOMENICK DEROSE

Sworn to before me this
28th Day of Feb. , 2018

_____
Notary Public

MUMINUL J ISLAM
Notary Public - State of New York
No. 01IS6279383
Qualified in Bronx County
My Commission Expires Apr. 08, 2021

STATE OF NEW YORK )
                      ) ss:
COUNTY OF Bronx )

I, **Ralph DeRose**, affirm that I have fully reviewed the foregoing Agreement with my attorneys, that it has been explained to me and, if necessary, has been fully interpreted to me in my native language, that I understand all of its provisions, and that I enter into this Agreement knowingly and voluntarily.

_____
RALPH DEROSE

Sworn to before me this
28th Day of February, 2018

_____
Notary Public

RENEE CROSS
NOTARY PUBLIC, State of New York
No. 01-4040233
Qualified in Bronx County
Commission Expires April 3, 2019

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSE CASTRO, et al.

                              Plaintiffs,

            -against-                              Case No.: 17-CV-07290 (GHW)

MECHANICAL INSTALLATION CORP., et al.           **ORDER OF VOLUNTARY**
                                                **DISMISSAL WITH PREJUDICE**
                              Defendants.

-----------------------------------------------------------------X

        Upon the joint application of the plaintiffs and the defendants, by their respective

counsel, for entry of an Order of Voluntary Dismissal with Prejudice approving the parties'

negotiated settlement in the above-captioned action, and the parties having consented to the entry

of this Order; and sufficient cause appearing for the same; after due deliberation; it is

        HEREBY ORDERED AS FOLLOWS:

        1.      The parties' settlement agreement has been negotiated in good faith and at arm's

length by the parties through their respective counsel;

        2.      The settlement agreement is approved as a fair and reasonable disposition of the

plaintiffs' claims asserted pursuant to the Fair Labor Standards Act; and

        3.      Accordingly, this action, and all of the claims asserted herein, is hereby dismissed

in its entirety with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

The Court shall retain jurisdiction over this matter solely to enforce the settlement agreement.

                                        **SO ORDERED:**

Dated: New York, New York
       _____, 2018

                                        _____
                                        Barbara C. Moses
                                        United States District Court Magistrate

4811-6222-0378, v. 1

# Exhibit B

The Klein Law Group, P.C.
39 Broadway, Suite 1530
New York, NY 10006

**2/28/2018**

**Invoice**                                    **Case #**    17-00380

Jose Castro
382 E. 197th Street, Apt. 21
Bronx , NY 10458

| | | | |
|---|---|---|---|
| 07/14/2017 | DARREN | 1.00 | drafting demand letter and out certified |
| 08/02/2017 | DARREN | 0.25 | drafting complaint |
| 08/07/2017 | DARREN | 0.75 | drafting complaint |
| 08/08/2017 | XLEI | 0.65 | damage calculation |
| 08/09/2017 | ROSA | 0.03 | calls to client |
| 08/14/2017 | ROSA | 0.02 | Called client |
| 08/14/2017 | ROSA | 0.01 | Contact Ltr to client |
| 08/18/2017 | DARREN | 0.05 | spoke to clmt --he'll call back to schedule appt |
| 08/30/2017 | DARREN | 0.05 | left v/m for clmt |
| 09/08/2017 | DARREN | 0.50 | clmt in office to review complaint |
| 09/11/2017 | DARREN | 0.75 | client in office to review case/revising complaint |
| 09/25/2017 | DARREN | 1.00 | finalizing complaint and filed on Pacer |
| 09/26/2017 | DARREN | 0.25 | S&C out for service |
| 11/02/2017 | DARREN | 1.00 | drafted clerk's certificate of default |
| 11/03/2017 | DARREN | 0.25 | re: default |
| 11/09/2017 | XLEI | 0.44 | updated damage calculation |
| 11/09/2017 | DARREN | 0.25 | updated Jose re: case status |
| 11/16/2017 | DARREN | 3.25 | drafting default judgment affidavits and declaration |
| 11/16/2017 | DARREN | 1.25 | drafting memo of law for default |
| 11/17/2017 | DARREN | 0.75 | client Rayan Thomas in office to review and sign affidavit |
| 11/28/2017 | DARREN | 0.25 | letter to clmt Castro |
| 11/29/2017 | DARREN | 0.50 | with client Castro to review and sign affidavit |
| 11/29/2017 | DARREN | 1.75 | finalizing default judgment package and exhibits |
| 11/29/2017 | DARREN | 1.00 | filed OTSC with Judge Woods |
| 11/30/2017 | DARREN | 0.25 | filed affidavit of service and mailed default package to defendants |
| 01/03/2018 | DARREN | 0.05 | forwarded paystubs to defense counsel |
| 01/09/2018 | DARREN | 0.05 | updated clients |
| 01/11/2018 | DARREN | 0.05 | settlement negotiations |
| 01/19/2018 | DARREN | 1.00 | conference call |
| 02/13/2018 | DARREN | 0.25 | reviewing settlement agreement |
| 02/15/2018 | DARREN | 0.50 | clmt Thomas in office to review and sign agreement |
| 02/16/2018 | DARREN | 0.25 | clmt Castro in office to review and sign agreement |

The Klein Law Group, P.C.
39 Broadway, Suite 1530
New York, NY 10006

**2/28/2018**

**Invoice**                              **Case #**      17-00380

Jose Castro
382 E. 197th Street, Apt. 21
Bronx , NY 10458

                                    **Total:**      18.401      $7,230.30

Please Submit with Payment  Case #  17-00380      Amount Paid: _____